UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| TERRY JOHNSON and AUTUMN BREEZE JOHNSON, <br><br> *Plaintiffs*, <br><br> vs. <br><br> MATTHEW AULT, SHAWNA AULT, CITY OF VINCENNES, CITY OF VINCENNES POLICE DEPARTMENT, CITY OF VINCENNES POLICE PENSION FUND BOARD OF TRUSTEES, CVS PHARMACY, INC., and HEATHER HAMMOND, <br><br> *Defendants*. | No. 2:24-cv-00050-JMS-MG |

## ORDER

Plaintiffs Terry Johnson and Autumn Breeze Johnson, a married couple, initiated this lawsuit against Defendants in Knox Circuit Court, and Defendants removed the case to this Court on the basis of federal question jurisdiction.  Plaintiffs each assert two federal claims and eight state law claims against Defendants.  Defendant CVS Pharmacy, Inc. ("CVS") has filed a Motion to Compel Plaintiff Terry Johnson's Claims to Arbitration and to Dismiss or Stay Proceedings with Regard to Defendant CVS, [Filing No. 10], and Defendants City of Vincennes, City of Vincennes Police Department ("VPD"), and City of Vincennes Police Pension Fund Board of Trustees ("Pension Board") (collectively, "the Vincennes Defendants") have filed a Motion to Dismiss for Failure to State a Claim, [Filing No. 21].  Additionally, the Johnsons have filed a Motion for Oral Argument, [Filing No. 38], and a Motion for Leave to File Surreply, [Filing No. 43], both regarding the Vincennes Defendants' Motion to Dismiss.  All Motions are now ripe for the Court's consideration.

# I.
## MOTION FOR ORAL ARGUMENT

The Johnsons filed a Motion for Oral Argument regarding the Vincennes Defendants' Motion to Dismiss.  [Filing No. 38.]  The parties' briefs, however, afforded the Court an adequate basis on which to rule on the Vincennes Defendants' Motion to Dismiss without the assistance of oral argument.  The Court, therefore, **DENIES** the Johnsons' Motion for Oral Argument, [Filing No. 38].

# II.
## MOTION FOR LEAVE TO FILE SURREPLY

The Johnsons filed a Motion for Leave to File Surreply regarding the Vincennes Defendants' Motion to Dismiss.  [Filing No. 43.]  They argue that "[t]he Vincennes Defendants' reply brief implicates a complicated issue of law that Plaintiffs would like to briefly clarify in the surreply; particularly, Plaintiffs desire to clarify the precise conduct that violates the Due Process Clause and the level of scrutiny applicable to the analysis."  [Filing No. 43 at 1.]  The Johnsons do not cite to any authority purporting to authorize their surreply or attach their proposed surreply. [*See* Filing No. 43.]

The Vincennes Defendants object to the Johnsons' Motion and argue that a surreply is limited to addressing new evidence or arguments in the reply brief.  [Filing No. 46 at 2.]  They assert that they are entitled to "the last bite of the apple," that "Plaintiffs had ample opportunity to brief the issues in their response that they claim need clarification since the [D]efendants did not raise any new issues or defenses in their reply briefing," and that "[i]f Plaintiffs failed to fully articulate their position and coherently address the core issues, that is not sufficient grounds to permit a surreply."  [Filing No. 46 at 2.]

The Johnsons did not file a reply.

"The decision to permit the filing of a surreply is purely discretionary and should generally be allowed only for valid reasons, such as . . . new arguments in a reply brief," *Meraz-Camacho v. United States*, 417 F. App'x 558, 559 (7th Cir. 2011), or new evidence raised in the reply brief, *Reis v. Robbins*, 2015 WL 846526, at *2 (S.D. Ind. Feb. 26, 2015). When these limited circumstances are not present, courts in this district deny a plaintiff's motion for leave to file a surreply. *See, e.g.*, *Lawrenceburg Power, LLC v. Lawrenceburg Mun. Utils.*, 410 F. Supp. 3d 943, 949-50 (S.D. Ind. 2019) (denying plaintiff's motion for leave to file a surreply relating to a motion to dismiss where defendant's reply brief did not raise new arguments or evidence). This is because the "purpose for having a motion, response and reply is to give the movant the final opportunity to be heard and to rebut the non-movant's response, thereby persuading the court that the movant is entitled to the relief requested by the motion." *Lady Di's, Inc. v. Enhanced Servs. Billing, Inc.*, 2010 WL 1258052, at *2 (S.D. Ind. Mar. 25, 2010).

Here, the Johnsons' Motion for Leave to File Surreply to "clarify" the law does not come within the limited circumstances of addressing new arguments or evidence raised in the Vincennes Defendants' reply brief. Therefore, the Court **DENIES** the Johnsons' Motion for Leave to File Surreply. [Filing No. 43.]

### III.
### MOTION TO DISMISS STANDARD OF REVIEW

Under Rule 12(b)(6), a party may move to dismiss a claim that does not state a right to relief. The Federal Rules of Civil Procedure require that a complaint provide the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)). In reviewing the sufficiency of a complaint, the Court must accept all well-pled facts as true and draw all permissible inferences in favor of the plaintiff. *See Active Disposal Inc. v. City of Darien*, 635

*F.3d 883, 886 (7th Cir. 2011).* A Rule 12(b)(6) motion to dismiss asks whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). The Court will not accept legal conclusions or conclusory allegations as sufficient to state a claim for relief. *See McCauley v. City of Chicago*, 671 F.3d 611, 617 (7th Cir. 2011). Factual allegations must plausibly state an entitlement to relief "to a degree that rises above the speculative level." *Munson v. Gaetz*, 673 F.3d 630, 633 (7th Cir. 2012). This plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## IV.
### BACKGROUND

The following are the relevant factual allegations set forth in the Complaint, which the Court accepts as true at this time pursuant to the standard above:

### A.    Mr. and Mrs. Johnson

Mr. and Mrs. Johnson are married to one another and reside in Vincennes, Indiana. [Filing No. 1-1 at 2.] Mr. Johnson served as an officer with VPD for twenty-six years. [Filing No. 1-1 at 3.] Mrs. Johnson owned and operated a daycare in Vincennes. [Filing No. 1-1 at 3.]

### B.    Mr. Johnson Takes Leave from VPD and Trains at CVS

In December 2021,[1] Mr. Johnson took leave from VPD for personal reasons. [Filing No. 1-1 at 3.] Around the same time, Mr. Johnson "had been contemplating retiring from the police

---

[1] Both the Johnsons' Complaint and the Vincennes Defendants' Motion to Dismiss state that Mr. Johnson took leave in December 2022. [Filing No. 1-1 at 3; Filing No. 22 at 1.] But since context clues indicate that the following events take place after Mr. Johnson's leave, the Court understands the parties' reference to 2022 to be a typo.

force and, while still on leave, he began a managerial job with CVS with the intention of working a brief probationary period to evaluate whether the job would be a suitable next career move." [Filing No. 1-1 at 3.]  VPD "was aware of [Mr. Johnson's] interest in employment with CVS." [Filing No. 1-1 at 3.]

As a part of his employment with CVS, Mr. Johnson signed an Arbitration Agreement. [Filing No. 11 at 3; Filing No. 10-1; Filing No. 26 at 2.]  Mr. Johnson completed four days of managerial training with CVS, during which VPD deemed Mr. Johnson "to be utilizing vacation time." [Filing No. 1-1 at 3.]  While Mr. Johnson was on leave on January 4, 2022, Mr. Johnson "experienced a medical issue," of which VPD was aware.  [Filing No. 1-1 at 5.]  Also while on leave, VPD's Chief of Police "approached [Mr. Johnson] and offered him" the position of VPD's Operations Officer.[2]  [Filing No. 1-1 at 3.]

### C.    Mr. Johnson Resigns from CVS and Accepts VPD's Job Offer

On February 24, 2022, Mr. Johnson resigned from CVS and accepted the Operations Officer position with VPD, which he began on February 28, 2022.  [Filing No. 1-1 at 4; Filing No. 1-1 at 6.]  Mr. Johnson "had fully recovered from his medical issue and had been cleared to return to work by multiple medical providers."  [Filing No. 1-1 at 6.]  Defendant Matthew Ault was the former Operations Officer for VPD, and due to Mr. Johnson's acceptance of the role, Mr. Ault was "bumped" "into a subordinate position."  [Filing No. 1-1 at 4.]

### D.    Defendant Shawna Ault Obtains Information About Mr. Johnson from CVS

Shortly after resuming work with VPD, Mr. Johnson "received an e-mail from CVS indicating that someone was attempting to access his CVS personnel account."  [Filing No. 1-1 at

---

[2] It is not clear whether Mr. Johnson's undisclosed medical issue predated or postdated the VPD job offer.  [*See* Filing No. 1-1 at 3-5.]

4.] Mr. and Mrs. Johnson later learned that Plaintiff Shawna Ault, wife of Mr. Ault, managed to obtain "personally identifiable information" regarding Mr. Johnson through Mr. Ault, "who had access to [such information] through his position at VPD." [Filing No. 1-1 at 4.] Mrs. Ault then used that information to glean other "private personal information from CVS through deceptive and fraudulent means." [Filing No. 1-1 at 4.] "Specifically, on multiple occasions in March, April, and early May 2022, [Mrs. Ault] called the CVS location where [Mr. Johnson] was formerly employed [and] impersonat[ed] an insurance representative." [Filing No. 1-1 at 4.] Mrs. Ault used Mr. Johnson's information "in her conversations with CVS representatives to convince such representatives that she worked for an insurance company and was calling for a legitimate purpose." [Filing No. 1-1 at 4.] Mrs. Ault, however, "was not an insurance representative, did not work for an insurance company, and did not work in the insurance industry." [Filing No. 1-1 at 4.]

In her conversations with CVS, Mrs. Ault "repeatedly asked CVS representatives for information such as the dates of [Mr. Johnson's] employment with CVS, the reasons for [Mr. Johnson's] resignation from CVS, and any medical conditions cited by [Mr. Johnson] in connection with his resignation." [Filing No. 1-1 at 4.] "During some of these conversations, agents and/or employees of CVS, including [Defendant] Heather Hammond" provided Mrs. Ault with the information she had requested. [Filing No. 1-1 at 4.]

### E.    Mr. and Mrs. Ault Disseminate the Information

Mr. and Mrs. Ault then "disseminated" the information Mrs. Ault had obtained, revealing it "at [a] minimum" to Mr. Johnson's colleagues at VPD; the Mayor of Vincennes; the Vincennes City Clerk-Treasurer; the Vincennes Police Civil Service Merit Commission; the Vincennes Board

of Public Works and Safety; the Knox County Prosecutor; the Indiana State Police; and the Vincennes City Council during a "publicly broadcast[ed] meeting." [Filing No. 1-1 at 5.]

On March 22, 2022, "the Pension Board met and discussed whether, in light of [Mr. Johnson's] medical issue," he should be required to undergo "a medical examination." [Filing No. 1-1 at 6.] Mr. Johnson learned of the Pension Board's March 22, 2022 discussion and became anxious and embarrassed about the possibility of being subject to a medical examination. [Filing No. 1-1 at 6.] He objected to the idea. [Filing No. 1-1 at 6.]

On April 18, 2022, the Pension Board met again and discussed Mr. Johnson's medical issue. [Filing No. 1-1 at 6.] They noted that Mr. Johnson had been cleared to work by his physicians but expressed concern about the specific nature of Mr. Johnson's medical issue. [Filing No. 1-1 at 6.] So, they issued a Resolution requiring Mr. Johnson to submit to a medical evaluation "with a police-affiliated medical provider to evaluate his fitness to serve." [Filing No. 1-1 at 6.] Mr. Johnson again objected. [Filing No. 1-1 at 6.] "The Resolution worsened [Mr. Johnson's] anxiety, embarrassment, and sleeplessness." [Filing No. 1-1 at 6.]

**F.    This Lawsuit**

The Johnsons filed this lawsuit on January 9, 2024 in Knox Circuit Court, [Filing No. 1-4 at 4], and Defendants[3] removed the matter to this Court on the basis of federal question jurisdiction. [Filing No. 1.] The Johnsons allege that they have each suffered emotional distress from the Defendants' actions and that Mrs. Johnson has also "lost love, companionship, affection, society,

---

[3] CVS filed the Notice of Removal, in which the Vincennes Defendants and the Aults consented. [Filing No. 1 at 5-7.] Ms. Hammond has yet to be served, and thus has not consented. Nevertheless, the removal was allowed. *See* 28 U.S.C. § 1446(b)(2)(A) ("When a civil action is removed solely under section 1441(a), all defendants who have been properly joined and *served* must join in or consent to the removal of the action.") (emphasis added).

comfort, services, and solace." [Filing No. 1-1 at 6.]  They each assert the following claims against

the following Defendants:

| | | Mr. Ault | Mrs. Ault | CVS | Ms. Hammond | Vincennes Defendants |
|---|---|---|---|---|---|---|
| 1 | Fraud, Ind. Code § 35-43-5-4 | | X | | | |
| 2 | Conspiracy to Commit Fraud, Ind. Code § 35-43-5-4 | X | X | | | |
| 3 | Defamation | X | X | | | |
| 4 | False Light | X | X | | | |
| 5 | Tortious Interference with Prospective Economic Advantage | X | X | | | |
| 6 | Intentional Infliction of Emotional Distress | X | X | | | |
| 7 | Public Disclosure of Private Facts | X | X | X | X | |
| 8 | Negligence | | | X | X | |
| 9 | Invasion of Privacy, 42 U.S.C. § 1983 | | | | | X |
| 10 | Disability Discrimination 42 U.S.C. §§ 12112, 12132 | | | | | X |

[Filing No. 1-1 at 6-14.]

**V.**
**VINCENNES DEFENDANTS' MOTION TO DISMISS**

**A.      Claims Against the Vincennes Defendants**

The Johnsons each assert two claims against the Vincennes Defendants: (1) a violation of

the ADA; and (2) a violation of the Due Process Clause via § 1983.  The Court analyzes each claim

by each Plaintiff separately, before addressing an argument made by the Vincennes Defendants

that VPD is not a suable entity and should be dismissed.

The Court clarifies at the outset that it has federal question jurisdiction under § 1331 to

address these claims since the Johnsons' Complaint raises federal questions by alleging the

deprivation of rights under the ADA and the Due Process Clause.  *Hero v. Lake Cnty. Election*

*Bd.*, 42 F.4th 768, 775 (7th Cir. 2022) ("Section 1331 gives district courts original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.  The well-pleaded rule requires that a federal question be apparent on the face of the complaint.  A federal statute that creates a cause of action raises a federal question.") (internal quotations and citations omitted)).  The Court also recognizes at the outset that while federal question jurisdiction gets the case through the front doors of this Court, it does not necessarily keep it there because there are additional components to the Court's subject-matter jurisdiction, such as standing.  *Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 278 (7th Cir. 2020) ("[S]tanding is an essential ingredient of subject-matter jurisdiction.").

### 1.    ADA Claims

The Johnsons' allegations regarding the ADA state that "[t]he Resolution adopted by [the Vincennes Defendants] singled out [Mr. Johnson] and subjected him to disparate treatment on the basis of his [medical issue they allege constitutes a disability]"; that Mr. Johnson was capable of performing his role with the VPD; that he was singled out for a fitness for duty evaluation "because of the specific nature of his disability"; that the Vincennes Defendants did not require other VPD employees with disabilities to submit to a fitness for duty evaluation; and that "[t]he Resolution constituted a materially adverse action against [Mr. Johnson]."  [Filing No. 1-1 at 13-14.]

### a.    Mrs. Johnson

The Vincennes Defendants contend in a footnote that Mrs. Johnson has no standing to bring an ADA claim.  [Filing No. 22 at 3.]  This is all they assert regarding Mrs. Johnson's claims.  [*See* Filing No. 22.]

In response, Mrs. Johnson argues that she has standing.  [Filing No. 37 at 9-12.]  She highlights that the Court does not deem information in footnotes as argument but nevertheless, she

has standing because she alleges "that she suffered reputational and pecuniary harm as a result of the Vincennes Defendants' unlawful conduct." [Filing No. 37 at 11.] Mrs. Johnson also argues that the Vincennes Defendants' argument "is in direct tension" with the removal of this case to federal court and that a Rule 12(b)(6) motion is not the proper motion for arguing a lack of standing. [Filing No. 37 at 10-11.] She contends that "[i]f the Court is left with any doubt about [her] standing, it should conduct a fact-finding hearing on the issue." [Filing No. 37 at 12 (citation omitted).] Lastly, she argues that if the Court finds that she lacks standing, the proper remedy is remand pursuant to 28 U.S.C. § 1447(c), not dismissal. [Filing No. 37 at 12.]

In reply, the Vincennes Defendants argue that Mrs. Johnson's lack of standing does not destroy federal question jurisdiction and that Mrs. Johnson's "incoherent argument on this point may be borne from confusion about how federal jurisdiction operates." [Filing No. 42 at 9.] They also argue that the Court can construe their standing argument as being brought under the proper Rule 12 motion, Rule 12(b)(1). [Filing No. 42 at 10.]

While the Johnsons are correct that the Court does not consider information in footnotes as argument, *see Practices & Procedures, Judge Jane E. Magnus-Stinson,* https://www.insd.uscourts.gov/sites/insd/files/JMS%20PRACTICES%20AND%20PROCEDURES.pdf (last visited July 19, 2024), the Court has an obligation to ensure that it has subject matter jurisdiction, regardless of the parties' arguments, *Continental Indem. Co. v. BII, Inc.*, 104 F.4th 630, 636 (7th Cir. 2024); *Moore v. Wells Fargo Bank, N.A.*, 908 F.3d 1050, 1057 (7th Cir. 2018) ("Standing is an element of subject-matter jurisdiction in a federal civil action.") (citation omitted); *Bazile*, 983 F.3d at 278 ("[S]tanding is an essential ingredient of subject-matter jurisdiction."). Further, "[s]ubject-matter jurisdiction can never be waived or forfeited." *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012). Thus, although the Vincennes Defendants lodged an

argument in a footnote and did not develop their argument or cite to authority, the issue has not been waived or forfeited and the Court must fulfill its obligation to ensure that Mrs. Johnson has standing to assert an ADA claim. The Court, however, expects that the Vincennes Defendants will comply with the Court's Practices and Procedures in future filings.

Although "an argument in favor of dismissal for lack of standing is properly brought under Federal Rule of Civil Procedure 12(b)(1)" and the Vincennes Defendants only filed their Motion to Dismiss under Rule 12(b)(6), the Court can and does construe the Vincennes Defendants' standing argument as brought under Rule 12(b)(1), while construing the remaining arguments under Rule 12(b)(6). *Parker v. Ind. High Sch. Athletic Ass'n*, 2009 WL 4806943, at *2 n.2 (S.D. Ind. Dec. 2, 2009) (noting that, despite Rule 12(b)(1) being the proper method to challenge standing, the court nevertheless construes defendants' Rule 12(b)(6) standing argument as brought under Rule 12(b)(1)).

"[T]he 'irreducible constitutional minimum' of standing consists of three elements. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338, (2016), *as revised* (May 24, 2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). An injury in fact is "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (citations and quotations omitted). "In the ordinary course, a litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties." *Edmonson v. Leesville Concrete Co., Inc.*, 500 U.S. 614, 629 (1991) (quoting *Powers v. Ohio*, 499 U.S. 400, 410 (1991)). A plaintiff must plead

sufficient factual allegations that "plausibly suggest" each of these elements.  *Silha v. ACT, Inc.*, 807 F.3d 169, 174 (7th Cir. 2015).

Here, Mrs. Johnson does not have standing to bring an ADA claim.  The Complaint only alleges that Mr. Johnson has a disability and was discriminated against by the Vincennes Defendants.  [*See* Filing No. 1-1 at 12-13.]  The Complaint does not allege any facts plausibly suggesting that Mrs. Johnson has a disability, was employed by the Vincennes Defendants, and suffered from discrimination on the basis of a disability, and does not cite to any authority purporting to establish that Mrs. Johnson has a legally protected interest under the ADA based on her husband's alleged disability.  And to the extent that Mrs. Johnson is attempting to allege a legally protected loss of consortium interest based on Mr. Johnson's alleged disability, "the ADA does not create such derivative claims."  *Orme v. Swifty Oil Co., Inc.*, 2000 WL 682678, at *1 (S.D. Ind. Mar. 28, 2000).  Simply put, Mrs. Johnson cannot satisfy the *Spokeo* requirements because she has no legal interest protected by the ADA that could have been harmed by the Vincennes Defendants and has not shown that she can assert a derivative claim.  The Court is not left with any doubt regarding Mrs. Johnson's standing, and thus declines her invitation for a fact-finding hearing in the interest of efficiency.  *See Dietz v. Bouldin*, 579 U.S. 40, 47 (2016) ("[D]istrict courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases.").

The Johnsons' argument that the Vincennes Defendants' standing argument is in direct tension with their removal of the matter to this Court also fails.  Here, Mrs. Johnson is not the only Plaintiff in the case—her husband is also a Plaintiff, and he asserts federal claims and has standing.  In other words, a finding that Mrs. Johnson lacks standing does not affect the Court's subject-matter jurisdiction over Mr. Johnson's federal claims.

Lastly, the Court turns to Mrs. Johnson's request to remand her claim under 28 U.S.C. § 1447(c), rather than dismiss her claim.  Remand under § 1447(c), however, is not appropriate here because the statute does not allow for a "partial remand."  28 U.S.C. § 1447(c), titled "Procedure after removal generally," states that, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."  "An ordinary reading of the language indicates that the statute refers to an instance in which a federal court 'lacks subject matter jurisdiction' over a 'case,' and not simply over one claim within a case."  *Wisconsin Dep't of Corr. v. Schacht*, 524 U.S. 381, 392 (1998).  Thus, the Court must either remand the entire case or dismiss claims over which the Courts lacks subject matter jurisdiction—"a partial remand is not contemplated by the statute."  *Parker v. Federal Highway Admin.*, 2022 WL 17103830, at *3 (S.D. Ind. Nov. 21, 2022) (finding that under § 1447(c), a partial remand is not available) (quotations and citation omitted); *see also City of E. St. Louis v. Monsanto Co.*, -- F. Supp. 3d ---, 2024 WL 1072036, at *7 (S.D. Ill. Mar. 12, 2024) (citing *Parker*, 2022 WL 17103830, at *3, and holding that partial remand was not appropriate under § 1447(c)).  The Court **GRANTS** the Vincennes Defendants' Motion to Dismiss to the extent it finds that Mrs. Johnson lacks standing to assert an ADA claim.

b.   <u>Mr. Johnson</u>

In support of their motion, the Vincennes Defendants argue that because Mr. Johnson failed to identify his disability in the Complaint, he fails to state an ADA claim.  [Filing No. 22 at 8-9.] They argue that pleading requirements and case law requires Mr. Johnson to allege his specific disability.  [Filing No. 22 at 8-9.]  They also argue that Mr. Johnson fails to state a claim because he does not adequately allege that he suffered from an adverse employment action.  [Filing No. 22 at 9.]

In response, Mr. Johnson argues that his failure to name a specific disability does not hinder his claim.  [Filing No. 37 at 7.]  He asserts that the "specific nature of [his] disability is immaterial" because "the Vincennes Defendants would have been unjustified in discriminating against [him] no matter the nature of his disability."  [Filing No. 37 at 7.]  Nevertheless, he contends that to the extent that his pleading constitutes a ground for dismissal, the omission of his disability "is readily curable with amendment" and "request[s] any dismissal be without prejudice."  [Filing No. 37 at 8 (emphasis omitted).]  Relating to the Vincennes Defendants' argument regarding the lack of an adverse employment action allegation, Mr. Johnson argues that he does not need to "show a materially adverse employment action."  [Filing No. 37 at 8 (citing *Hoffman v. Caterpillar, Inc.*, 256 F.3d 568, 576 (7th Cir. 2001) ("with respect to employment actions specifically enumerated in the statute, a materially adverse employment action is not a separate substantive requirement")).]  He also asserts that, to the extent that an adverse employment action must be shown, the allegations in his Complaint and the reasonable inferences to ascertainable therefrom demonstrate that he suffered a hostile work environment, which qualifies as an adverse employment action within the meaning of the ADA.  [Filing No. 37 at 9 (citations omitted).]  He requests that if the Court finds against him on the adverse employment action element, that any dismissal be without prejudice as he "can promptly cure [the] defect upon amendment."  [Filing No. 37 at 9.]

In reply, the Vincennes Defendants reiterate that Mr. Johnson's ADA claim should be dismissed for failing to identify a disability and contend that the Johnsons can then "seek to cure" the claim.  [Filing No. 42 at 2.]

The ADA prohibits discrimination "on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a). To

state a claim under the ADA, a plaintiff "must allege that he is disabled within the meaning of the [ADA], is nevertheless qualified to perform the essential functions of the job either with or without reasonable accommodation, and has suffered an adverse employment action because of his disability." *Tate v. SCR Med. Transp.*, 809 F.3d 343, 345 (7th Cir. 2015) (citing *Gogos v. AMS Mechanical Systems, Inc.*, 737 F.3d 1170, 1172 (7th Cir. 2013)).   The Seventh Circuit has instructed that, "surely a plaintiff alleging discrimination on the basis of an actual disability under 42 U.S.C. § 12102(1)(A) must allege a specific disability." *Tate*, 809 F.3d at 345.

Related to the adverse employment action element, if a plaintiff alleges that he is being denied job training or another "specifically enumerated" employment action in 42 U.S.C. § 12112(a), the plaintiff is not required to make a separate showing regarding material adversity. *Hoffman*, 256 F.3d at 575-76.   However, when the plaintiff's allegations do not concern a "specifically articulated prohibition, but rather the other 'terms, conditions, and privileges of employment," the plaintiff must still allege a sufficient adverse employment action. *Id.* at 575 (citing *Crady v. Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993)); *see also Emerick v. Wood River—Hartford Sch. Dist. No. 15*, 2018 WL 11508494, at *3 (S.D. Ill. Mar. 9, 2018).   "While adverse employment actions extend beyond readily quantifiable losses, not everything that makes an employee unhappy is an actionable adverse action." *Kurtzhals v. Cnty. of Dunn*, 969 F.3d 725, 729 (7th Cir. 2020).   "To be actionable, an employment action must be a significant change in employment status, . . . a decision causing a significant change in benefits," or an "unbearable change in job conditions, such as a hostile work environment. *Tarpley v. City of Colls. of Chi.*, 752 F. App'x 336, 346-47 (7th Cir. 2018) (quotation and citations omitted). "Conditions that create a hostile work environment must be sufficiently severe or pervasive to alter the conditions of employment."

### i.       Disability

Here, Mr. Johnson fails to provide any facts regarding his alleged disability.  The law is clear that a plaintiff must allege a disability within the meaning of the ADA and that doing so requires disclosure of the specific disability.  *Tate*, 809 F.3d at 345.  Without such facts, Mr. Johnson fails to state an ADA claim.

### ii.       Adverse Action

Mr. Johnson also fails to state an ADA claim because, in his case, a materially adverse employment action is required, and his allegations as to an adverse action are insufficient.  Mr. Johnson does not allege discrimination in one of the specifically articulated categories of "job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training".  42 U.S.C. § 12112(a).  Rather, his allegations fall within the generalized "other terms, conditions, and privileges of employment," 42 U.S.C. § 12112(a), such that he is required to state that he suffered a materially adverse employment action.

Although a hostile work environment qualifies as an adverse action, Mr. Johnson's factual allegations do not "plausibly allege" above "the speculative level," *Munson*, 673 F.3d at 633, that he was subjected to a hostile work environment that was "sufficiently severe or pervasive to alter the conditions of employment," *Tarpley*, 752 F. App'x at 347.  Notably, he only alleges that "[t]he Resolution constituted a materially adverse action against [him]"; that he objected to it; and that it caused him "anxiety, embarrassment, and sleeplessness."  [Filing No. 1-1 at 6; Filing No. 1-1 at 14.]  The Court cannot not accept Mr. Johnson's legal conclusion, *see McCauley*, 671 F.3d at 617, and his allegations do not go so far as to allege facts indicating his environment was either severe or pervasive, let alone that it altered the conditions of his employment (*i.e.*, he was fired, put on leave, constructively discharged, etc.), *see Tarpley*, 752 F. App'x at 346-47.  His scarce facts,

amounting only to being ordered to submit to a medical evaluation to ensure he was fit to serve after suffering a medical issue, do not indicate a severe or pervasive environment when: (1) there are no facts as to Mr. Johnson's medical issue/alleged disability; (2) the ADA specifically authorizes an employer to order a fitness for duty evaluation for employees with or without a disability as long as the evaluation "is shown to be job-related and consistent with business necessity," 42 U.S.C. § 12112(d)(4)(A); *Kurtzhals v. Cnty. of Dunn*, 969 F.3d 725, 730 (7th Cir. 2020); and (3) the Seventh Circuit has instructed that (a) since police officers are "responsible for public safety," their "well-being [is] essential not only to [their] safety but to the public at large; thus, [police departments have] a particularly compelling interest in assuring that [its police officers are] both physically and mentally fit to perform [their] duties" and (b) that "[t]his special work environment necessitates greater leeway for supervisors to order job-related fitness-for-duty-evaluations." *Id.* at 731 (quotations and citations omitted).

The Court **GRANTS** the Vincennes Defendants' Motion to Dismiss to the extent it finds that Mr. Johnson fails to state an ADA claim.[4]  Since Mr. Johnson requested an opportunity to amend his Complaint and the Vincennes Defendants agreed that Mr. Johnson could "seek to cure," [Filing No. 42 at 2], the Court **ORDERS** Mr. Johnson to file any Amended Complaint by **August 8, 2024**.

### 2.    *Section 1983 Claims*

The Johnsons allege that they have "a fundamental constitutional right of decisional privacy" under the Due Process Clause of the Fourteenth Amendment and that the Vincennes

---

[4] "An examination is job-related and consistent with business necessity when an employer has a reasonable belief based on objective evidence that a medical condition will impair an employee's ability to perform essential job functions or that the employee will pose a threat due to a medical condition." *Kurtzhals,* 969 F.3d at 730-31 (quotations and citation omitted).

Defendants "infringed this right by adopting the Resolution." [Filing No. 1-1 at 12.]  They allege that the "Resolution was adopted [by the Vincennes Defendants] with evil motive or intent, or reckless or callous indifference to the federally protected rights of [Mr. Johnson]." [Filing No. 1-1 at 13.]

>              a.   Mrs. Johnson

The parties make some of the same arguments as identified above in Part V.A.1.a. regarding Mrs. Johnson's standing to assert an ADA claim.  The Court need not revisit the general standing arguments from above regarding the Vincennes Defendants' footnote, the Court's federal question jurisdiction, the proper motion to assert a lack of standing argument, a fact-finding hearing, and remand rather than dismissal, for those analyses and holdings apply equally here. Instead, the Court proceeds straight to analyzing the parties' § 1983-specific standing arguments.

In response to the Vincennes Defendants' footnote argument that Mrs. Johnson lacks standing, Mrs. Johnson argues that she "readily clears the Article III standing bar as she has suffered concrete injuries directly traceable to the Vincennes Defendants' unlawful conduct." [Filing No. 37 at 11.]  She cites *Massey v. Helman*, 196 F.3d 727, 739 (7th Cir. 1999), for the proposition that "[w]hen a person . . . seeks standing to advance the constitutional rights of others," courts ask first whether the litigant has suffered an injury in fact under the Article III test, and second whether the person is the proper proponent of the particular legal right asserted.  [Filing No. 37 at 11.]  She argues that she is "the proper proponent of her claim[ ] as her pecuniary interests overlap with her husband's and any harm suffered because of [his] deprivation of rights will be felt by [her]."  [Filing No. 37 at 12.]

In reply, the Vincennes Defendants argue that Mrs. Johnson lacks standing because "she is not subject to the medical evaluation" and therefore "has not suffered any injury through a potential invasion of privacy." [Filing No. 42 at 11.]

The Court references the general law of standing as discussed above and does not set forth the law for a second time, except to restate that an injury in fact is "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (citations and quotations omitted). The Court nevertheless expands upon the law based on the arguments made regarding the right of an individual to assert another's constitutional rights. Generally, "constitutional rights are personal and may not be asserted vicariously." *Broadrick v. Oklahoma*, 413 U.S. 601, 610 (1973) (citation omitted); *see also Massey*, 196 F.3d at 739 (same principle); *United States v. Hansen*, 599 U.S. 762, 769 (2023) ("[L]itigants typically lack standing to assert the constitutional rights of third parties.") (citation omitted). However, there are rare occasions where a person can advance the constitutional right of another—where the person "has suffered a concrete, redressable injury, . . . has a close relation with the third party, and . . . there exists some hindrance to the third party's ability to protect [his] own interests." *Edmonson v. Leesville Concrete Co., Inc.*, 500 U.S. 614, 629 (1991); *see also Massey*, 196 F.3d at 739.

Here, because Mrs. Johnson cites law regarding the right of a third party to assert another's constitutional rights, the Court understands Mrs. Johnson to be claiming that she has standing to assert Mr. Johnson's constitutional rights, rather than claiming that her own constitutional rights

were violated.[5]  In this context, Mrs. Johnson's arguments fail.  This is not one of the "rare occasions" identified above because there exists no hinderance to Mr. Johnson's ability to protect his own constitutional rights, as evidenced by his own assertion of his constitutional rights in this lawsuit.  The Court **GRANTS** the Vincennes Defendants' Motion to Dismiss to the extent it finds that Mrs. Johnson lacks standing to assert a § 1983 claim.

> b.    Mr. Johnson

In their Motion, the Vincennes Defendants argue that Mr. Johnson fails to state a § 1983 claim because he "does not allege that the Vincennes Defendants compelled him to disclose confidential medical records," that Mr. Johnson does not allege that he actually submitted to the fitness for duty evaluation, and that "the mere ordering of a medical evaluation is not actionable under the Due Process [C]lause."  [Filing No. 22 at 6.]  The Vincennes Defendants assert that the Due Process Clause "does not protect an employee from having his employer (or a Pension Board) consider, discuss, or decide whether a fitness for duty evaluation is appropriate" and it does not "provide an employee with a basis for relief where the employer never compelled the employee to submit to the fitness for duty evaluation."  [Filing No. 22 at 7-8.]

In response, Mr. Johnson argues that the Vincennes Defendants' argument "completely misses the point" because his § 1983 claim is not based on the Vincennes Defendants revealing private information, but instead is based "entirely on a deprivation of [his] fundamental right to

---

[5] Even if Mrs. Johnson were claiming that her constitutional rights were violated, she cites no authority to stand for the proposition, nor could she, that she has a constitutionally protected liberty interest for her husband not to be bothered or to the right to consortium. *Sell v. Price*, 527 F. Supp. 114, 117 (S.D. Ohio 1981) (holding that plaintiff wife did not implicate a constitutionally protected privacy right when she "argue[d] that the due process rights of her husband were invaded (with resulting injury to herself)"); *Lopez v. Ruhl*, 584 F. Supp. 639, 650 (W.D. Mich 1984) ("[T]he right to consortium is not within the spectrum of interests guaranteed by the Constitution or federal law.") (quoting *Walters v. Village of Oak Lawn*, 548 F. Supp. 417, 419 (N.D. Ill. 1982)).

decisional privacy," not informational privacy.  [Filing No. 37 at 3.]  He asserts that "the Vincennes Defendants violated [his] rights when they removed a constitutionally protected choice from his hands, causing significant emotional and reputational harm and separate injury to [his] privacy." [Filing No. 37 at 5.]  Mr. Johnson asserts that it is the Resolution "itself that constitutes the alleged guilty conduct," not the discussions or considerations leading up to the Resolution.  [Filing No. 37 at 4.]  He argues that the "the Pension Board did compel [him] to submit to the fitness for duty evaluation" and that the Vincennes Defendants' argument that the claim cannot proceed without proof that he actually submitted to the evaluation "must fail as courts have never required that a [§ 1983] plaintiff show, as a prerequisite to suit, that [his] rights were violated to the maximum possible extent."  [Filing No. 37 at 4 (emphasis and citations omitted).]  Mr. Johnson argues that "there is no serious dispute that the medical evaluation ordered by the Vincennes Defendants constituted 'unwanted medical treatment'" that an individual has a constitutionally protected right to refuse.  [Filing No. 37 at 5-6 (citing cases that hold that a competent individual has a constitutionally protected liberty interest in refusing unwanted medical treatment).]

In reply, the Vincennes Defendants highlight that Mr. Johnson "seemingly claim[s], on the one hand, that the due process right that was infringed was [his] right to refuse unwanted medical treatment and, on the other hand, that the deprivation was the [R]esolution itself."  [Filing No. 42 at 3.]  They assert that Mr. Johnson "exercised, and was not deprived, the very right he claims is protected (e.g. the right to refuse an unwanted medical evaluation and 'protest the notion' of undergoing a medical evaluation)."  [Filing No. 42 at 3.]  They argue that the cases that Mr. Johnson cites in support of his claim are inapposite and that the Resolution cannot be compared to compelled medical treatment because it is a fitness for duty evaluation, which is "something less

intrusive" than "treatment." [Filing No. 42 at 4-5.] They reiterate that Mr. Johnson "declined the evaluation so no right could have been abrogated" anyway. [Filing No. 42 at 6.]

The Fourteenth Amendment provides in part that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The Fourteenth Amendment's Due Process Clause has both a substantive and procedural component. *Lukaszczyk v. Cook Cnty.*, 47 F.4th 587, 599 (7th Cir. 2022). Here, the Johnsons proceed via the substantive component, which protects against certain state actions regardless of the fairness of any procedural protections. *City of Sacramento v. Lewis*, 523 U.S. 833, 840 (1998). "[T]he scope of substantive due process is very limited" and it "protects against only the most egregious and outrageous government action." *Lukaszczyk*, 47 F.4th at 599 (citations omitted).

Stating a substantive due process claim requires a plaintiff to assert "a deprivation of a right that is 'so rooted in the traditions and conscience of our people as to be ranked fundamental.'" *Smith v. Garland*, 103 F.4th 1244, 1256 (7th Cir. 2024) (quoting *Reno v. Flores*, 507 U.S. 292, 303 (1993)); *see also Lukaszczyk*, 47 F.4th at 599. The Supreme Court has instructed that courts should be "reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." *Collins v. City of Harker Heights*, 503 U.S. 115 (1992); *see also Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997) (reiterating that courts must exercise the "utmost care" whenever asked to break new ground in the realm of substantive due process); *Department of State v. Muñoz*, 144 S. Ct. 1812, 1821-22 (2024) ("Identifying unenumerated rights carries a serious risk of judicial overreach, so this Court 'exercise[s] the utmost care whenever we are asked to break new ground in this field.'") (quoting *Glucksberg*, 521 U.S. at 720)).

"When a fundamental right is at stake, the [state] can act only by narrowly tailored means that serve a compelling state interest." *Muñoz*, 144 S. Ct. at 1821 (citing *Glucksberg*, 521 U.S. at 721); *see also Lukaszczyk*, 47 F.4th at 599-600.   If a plaintiff fails to establish the threshold requirement that the challenged state action implicates a fundamental right, then only "a reasonable relation to a legitimate state interest to justify the action" is required to pass constitutional muster. *Glucksberg*, 521 U.S. at 722; *see also Lukaszczyk*, 47 F.4th at 602 ("Unless a governmental practice encroaches on a fundamental right, substantive due process requires only that the practice be rationally related to a legitimate government interest, or alternatively phrased, that the practice be neither arbitrary nor irrational.").

The right that Mr. Johnson claims the Vincennes Defendants violated via the Resolution— his "decisional privacy" regarding a fitness for duty evaluation—is not a fundamentally protected right under the circumstances alleged here.  While the Due Process Clause "protects the traditional right to refuse unwanted lifesaving medical treatment," *Glucksberg*, 521 U.S. at 720 (citing *Cruzan v. Director, Mo. Dep't of Health*, 497 U.S. 261, 278-79 (1990)), the Court declines Mr. Johnson's invitation to find that such a right is at issue here because a fitness for duty evaluation is not akin to "treatment," and the cases that Mr. Johnson cites do not stand for such a proposition.  Instead, the cases involve actual medical treatment (such as life-sustaining medical care and the administration of antipsychotic drugs) or distinguishable facts.  *See Cruzan by Cruzan v. Dir., Mo. Dep't of Health*, 497 U.S. 261, 278 (1990) (holding that while "a competent person has a constitutionally protected liberty interest in refusing unwanted medical treatment," incompetent individuals are not able to exercise such rights to refuse life-sustaining treatment); *Washington v. Harper*, 494 U.S. 210, 221-22 (1990) (administration of antipsychotic drugs); *Youngberg v. Romeo*, 457 U.S. 307, 315-19 (1982) (involuntarily committed individual retains qualified liberty

interests in safety and freedom from bodily restraint while in an institution); *Rochin v. California*, 342 U.S. 165, 173-74 (1952) (forced stomach pumping offends Due Process Clause); *Cassell v. Snyders*, 990 F.3d 539, 550 (7th Cir. 2021) (holding that the district court did not abuse its discretion in denying a preliminary injunction regarding a state executive order that limited in-person religious gatherings to ten people in the early stages of the Covid-19 pandemic and recognizing that "[a] person's ability to make private choices affecting his or her own body and health is fundamental to the concept of individual liberty that our Constitution protects.") (citations omitted).

In short, the cases that Mr. Johnson cites in support of his argument that the Vincennes Defendants violated his constitutional right to be free from forced medical "treatment" are of no help to his case.  The Court's own research did not locate any authority, in this Circuit or otherwise, establishing that a fitness for duty evaluation is considered "treatment" that an individual has a constitutional right to refuse, and in fact, the Court's research revealed the contrary.  *Capen v. Saginaw Cnty., Mich.*, 103 F.4th 457, 464-66 (6th Cir. 2024) ("the liberty interest in refusing medical treatment does not protect [plaintiff's (a county maintenance worker)] ability to refuse the fitness-for-duty evaluations" when the purpose of the evaluations "appeared to be descriptive," "rather than order him to make particular treatment decisions").  Without authority purporting to establish a fundamental right, this Court heeds the caution of the oft-cited guidance that "the scope of substantive due process is very limited," *Lukaszczyk*, 47 F.4th at 599, and that courts must be "reluctant to expand the concept . . . because guideposts for responsible decisionmaking in this uncharted area are scarce and open-ended," *Collins*, 503 U.S. 125; *see also Glucksberg*, 521 U.S. at 720-21; *Muñoz*, 144 S. Ct. at 1821-22.

Since Mr. Johnson fails to assert a fundamental right, the Court proceeds to address whether ordering Mr. Johnson to submit to a fitness for duty evaluation due to his undisclosed medical issue is rationally related to a legitimate government interest. *See Glucksberg*, 521 U.S. at 722; *Lukaszczyk*, 47 F.4th at 602. This analysis is simple, however, because Mr. Johnson did not argue under this part of the substantive due process analysis, and so has waived the argument. *Ross v. Fin. Asset Mgmt. Sys., Inc.*, 74 F.4th 429, 434 (7th Cir. 2023) (the failure to develop an argument results in waiver); *Schaefer v. Universal Scaffolding & Equip., LLC*, 839 F.3d 599, 607 (7th Cir. 2016) ("undeveloped arguments are waived"). The Court **GRANTS** the Vincennes Defendants' Motion to Dismiss to the extent it finds that Mr. Johnson fails to state a § 1983 claim.[6]

### B.   VPD as a Suable Entity

Lastly, the Vincennes Defendants argue that "VPD is not a suable entity and must be dismissed." [Filing No. 22 at 11 (citing *Sow v. Fortville Police Dep't*, 636 F.3d 293, 300 (7th Cir. 2011)).] The Johnsons do not respond to this argument. [*See* Filing No. 37.] This results in the waiver of any argument in opposition. *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver."); *see also Abrego v. Wilkie*, 907 F.3d

---

[6] Although not discussed or otherwise addressed by the parties, the Johnsons' § 1983 claims also contain an allegation that the Resolution violated Mr. Johnson's rights under the "Due Course clause of the Indiana Constitution." [Filing No. 1-1 at 12.] These claims, however, were brought under 42 U.S.C. § 1983, which requires a violation of federal law. 42 U.S.C. § 1983; *see also Flynn v. Sandahl*, 58 F.3d 283, 290 (7th Cir. 1995); *Pesce v. J. Sterling Morton High Sch. Dist.*, 830 F.2d 789, 795 (7th Cir. 1987). Therefore, the Court **DISMISSES WITH PREJUDICE** the Johnsons' § 1983 claims to the extent they are based on anything other than federal law. Dismissal with prejudice is appropriate because the Johnson's cannot cure the deficiency the Court has identified. *See Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008) ("[D]istrict courts have broad discretion to deny leave to amend where . . . the amendment would be futile.").

1004, 1012 (7th Cir. 2018) (holding that the district court correctly concluded that plaintiff's failure to respond to defendant's arguments results in waiver).

In any event, the Vincennes Defendants are correct that VPD is not a suable entity.  A city police department is not a properly suable entity because Indiana law does not provide for municipal police departments to sue or to be sued.  *See Sow*, 636 F.3d at 300; ("[T]he Indiana statutory scheme does not grant municipal police departments the capacity to sue or be sued."); *Hounsel v. Bade*, 2024 WL 1908120, at *2 (S.D. Ind. May 1, 2024) (collecting cases showing that "[t]his Court has consistently dismissed claims against Indiana municipal police departments at the pleadings stage because municipal police departments are not suable under Indiana law").  The Court **GRANTS** the Vincennes Defendants' Motion to Dismiss to the extent it finds that VPD is not a suable entity.

## VI.
### CVS's MOTION TO COMPEL ARBITRATION AND TO DISMISS OR STAY

Because the Johnsons only asserted federal claims against the Vincennes Defendants and the Court has dismissed all federal claims, the Court must address the issue of jurisdiction before proceeding to the merits of CVS' Motion.

"Subject-matter jurisdiction is the first issue in any case . . . ." *Continental Indem. Co.*, 104 F.4th at 636 (quoting *Miller v. Southwest Airlines Co.*, 926 F.3d 898, 902 (7th Cir. 2019)).  "It is axiomatic that federal courts have an independent obligation to ensure that they have subject matter jurisdiction over each case heard, regardless of whether the parties have raised the issue." *Continental Indem. Co.*, 104 F.4th at 636 (citing *Ware v. Best Buy Stores, L.P.*, 6 F.4th 726, 731 (7th Cir. 2021)).  "This is because '[f]ederal courts are courts of limited jurisdiction.  They possess only that power authorized by [the] Constitution and statute . . . ." *Continental Indem. Co.*, 104 F.4th at 636 (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)); *see*

26

also *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 427 (7th Cir. 2009) ("[I]t is always a federal court's responsibility to ensure it has jurisdiction").  "The party invoking federal jurisdiction bears the burden of establishing that it exists."  *Sykes v. Cook Inc.*, 72 F.4th 195, 205 (7th Cir. 2023) (citing *Page v. Democratic Nat'l Comm.*, 2 F.4th 630, 634 (7th Cir. 2021)).

The case was removed to this Court on the basis of federal question jurisdiction.  [Filing No. 1.]  *See supra* discussion Part IV.F.  The Notice of Removal, however, does not address the Court's jurisdiction over the state law claims.  There are two possible bases for the Court's subject-matter jurisdiction over the numerous state law claims: diversity of citizenship under 28 U.S.C. § 1332 and supplemental jurisdiction under 28 U.S.C. § 1367.  The Court analyzes both possible bases.

As for diversity of citizenship, Plaintiffs' allegations are inadequate to establish diversity jurisdiction, and CVS's Notice of Removal neither alleges additional information regarding the parties' citizenships nor the amount in controversy—the two basic requirements for diversity jurisdiction.  28 U.S.C. § 1332.  Accordingly, the Court finds that the requirements of diversity jurisdiction are not met.

Turning to supplemental jurisdiction, the supplemental jurisdiction statute provides in relevant part that, when a court has original jurisdiction over a federal claim, it also has supplemental jurisdiction over "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).  To "form part of the same case or controversy," the claims must "share a common nucleus of operative facts."  *Prolite Bldg. Supply, LLC v. MW Mfrs., Inc.*, 891 F.3d 256, 258 (7th Cir. 2018); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966).  While "[a] loose factual connection between the claims is

generally sufficient," *Ammerman v. Sween*, 54 F.3d 423, 424 (7th Cir. 1995), "the facts connecting them must nonetheless be operative in determining the outcome of the federal claim," *O'Shea v. Augustana Coll.*, 593 F. Supp. 3d 838, 854 (C.D. Ill. 2022) (finding no supplemental jurisdiction where "the evidence required to resolve the two sets of claims is entirely separate") (citing *Saud v. DePaul Univ.*, 2019 WL 5577239, at *7 (N.D. Ill. Oct. 29, 2019) (finding no supplemental jurisdiction where "[t]he state law claims [had] little, if any, overlap with [the] evidence" required for resolution of the plaintiff's federal claims)). Claims that are merely sequentially related or just provide factual background for the federal claim are not sufficient to confer supplemental jurisdiction where the state law claims can be resolved regardless of the outcome on the federal claim. *O'Shea*, 593 F. Supp. 3d at 854 (quotations and citations omitted).

Here, the state law claims do not meet the rule for conferring supplemental jurisdiction. Distilled, there are two distinct nuclei of operative facts between the federal and state law claims. The federal claims' nucleus of operative facts focuses on the Pension Board's authority to issue the Resolution and the actions it took pursuant to that Resolution. The state law claims' nucleus, however, stretches only as far as the Aults' actions regarding obtaining information about Mr. Johnson and disseminating it and CVS's assistance in the Aults' actions. Thus, the operative facts and evidence are not common amongst the two sets of claims and do not overlap. Whether and to what extent the Aults and CVS incur liability due to their actions regarding Mr. Johnson's information has no effect on whether the Vincennes Defendants violated Mr. Johnson's federal rights by ordering him to submit to a fitness for duty medical evaluation.

Although not discussed by either party, the Court notes that remand of the state claims, rather than dismissal, is appropriate under 28 U.S.C. § 1441(c). Section 1441(c), titled "Removal of civil actions," provides:

(c) Joinder of Federal law claims and State law claims.

    (1) If a civil action includes—

        (A) a claim arising under the Constitution, laws, or treaties of the United States (within the meaning of section 1331 of this title), and

        (B) a claim not within the original or supplemental jurisdiction of the district court or a claim that has been made nonremovable by statute, the entire action may be removed if the action would be removable without the inclusion of the claim described in subparagraph (B).

    (2) Upon removal of an action described in paragraph (1), the district court shall sever from the action all claims described in paragraph (1)(B) and shall remand the severed claims to the State court from which the action was removed. . . .

Because the state law claims are not within the Court's supplemental jurisdiction, remand of the state law claims to Knox Circuit Court is necessary.  28 U.S.C. § 1441(c).  The Court **DENIES WITHOUT PREJUDICE TO REFILE IN STATE COURT** CVS's Motion to Compel Arbitration and to Dismiss or Stay Proceedings, [Filing No. 10], and **REMANDS** the Johnsons' state law claims against CVS, Mr. Ault, Mrs. Ault, and Ms. Hammond to the Knox Circuit Court.

## VII.
### CONCLUSION

For the foregoing reasons, the Court:

- **DENIES** the Johnsons' Motion for Oral Argument, [38];

- **DENIES** the Johnsons' Motion for Leave to File Surreply, [43];

- **GRANTS** the Vincennes Defendants' Motion to Dismiss, [21], and

    ○ **DISMISSES** Mrs. Johnson's ADA and § 1983 claims **WITH PREJUDICE**;[7]

---

[7] Ordinarily, a dismissal for lack of jurisdiction is without prejudice, but when the basis for the lack of jurisdiction is a federal claim that cannot proceed even in state court, dismissal with prejudice is appropriate.  *El v. AmeriCredit Fin. Servs., Inc.*, 710 F.3d 748, 751 (7th Cir. 2013).

- o **DISMISSES** Mr. Johnson's ADA and § 1983 claims **WITHOUT PREJUDICE**; and

- o **DISMISSES** all claims against **VPD WITH PREJUDICE**;

- **ORDERS** Mr. Johnson to file any Amended Complaint by **August 8, 2024**. Should Mr. Johnson choose to do so, this will be his last opportunity without establishing good cause, and he must carefully consider the Court's analysis here as to the legal merit of any claim he may file, and is **ORDERED** to limit his claim(s) to only his federal claims against the Pension Board and the City of Vincennes;

- **DENIES WITHOUT PREJUDICE TO REFILE IN STATE COURT** CVS' Motion to Compel Arbitration and to Dismiss or Stay Proceedings, [10]; and

- **REMANDS** the Johnsons' state law claims against CVS, Mr. Ault, Mrs. Ault, and Ms. Hammond to the Knox Circuit Court.

No partial final judgment shall issue.


Date: 7/23/2024

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana


**Distribution via ECF to all counsel of record**

**Distribution via U.S. Mail to**

Matthew Ault
4976 N. Old 41
Vincennes, IN 47591

Shawna Ault
4976 N. Old 41
Vincennes, IN 47591

Heather Hammond
11220 Hwy 57
Evansville, IN 47225